[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2005
THOMAS K. KAHN
CLERK

No. 04-13116
Non-Argument Calendar
_____

BIA No. A97-189-233

MARUF BANGSAWA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(June 8, 2005)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Maruf Bangsawa, a citizen and native of Indonesia, proceeding pro se,

petitions this Court for review of the Board of Immigration Appeals' ("BIA's")

final order affirming the Immigration Judge's ("IJ's") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA").[1] After review, we dismiss in part and deny in part Bangsawa's petition.

## I. BACKGROUND

Although Maruf Bangsawa has lived in the United States since October 31, 1999, his non-immigrant crewman visa expired on November 14, 1999. On March 18, 2003, Bangsawa filed a petition for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"). On April 15, 2003, the Bureau of Immigration and Customs Enforcement ("BICE") served Bangsawa with a notice to appear, charging that he was an alien subject to removal because he had overstayed his visa. On May 20, 2003, Bangsawa appeared before the IJ and conceded his removability, pursuing only on his claims for asylum, withholding of removal, and CAT relief.

### A. Bangsawa's Application and Testimony Before the IJ

In his asylum application and in his testimony before the IJ, Bangsawa claimed that he was attacked and threatened by Muslims in Indonesia because of

---

[1]Because Bangsawa's removal proceedings commenced after April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by the IIRIRA. Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

his Christian faith. Specifically, Bangsawa stated that: (1) when he was a child, his parents held Bible studies at their home with Jehovah's Witnesses; (2) in 1979, a group of Muslims told his parents to stop having religious gatherings in their home; (3) later, Muslims threw rocks at their home and mocked their faith; and (4) in 1980, his parents were forced to move because their lives were in danger.[2]

Bangsawa claimed that his life was peaceful from 1980 until 1990, when his Muslim neighbors threw stones at his family's house and threatened to kill his family. Bangsawa's neighbors also assaulted the Jehovah's Witnesses who came to his parents' home for Bible study.

Bangsawa reported further incidents beginning in 1996. Specifically, Bangsawa claimed that: (1) in January 1996, he was fired from his job for being a Christian; (2) in July 1997, his house was burglarized and vandalized, and anti-Christian words were written on the walls; (3) in January 1998, he received a letter from radical Muslims, stating that non-Muslims should get out of Indonesia; (4) in mid-January 1998, when he was going to church with his parents, a group of Muslims with knives stopped their car and shattered their windshield with stones,

_____

[2]There is some confusion about Bangsawa's religious background. Bangsawa claimed that he was a Christian and not a Jehovah's witness. However, he also claimed that his parents were Jehovah's Witnesses, had gatherings in their home for Jehovah's Witnesses, and witnessed to Bangsawa. It is clear that Bangsawa now contends that he is a Christian. He also contends that the precise nature of his religion is not relevant because he was persecuted by Muslims simply because he is a non-Muslim.

3

seriously injuring his mother; and (5) in February 1998, he and his brother were attacked by a group of Muslims.

Bangsawa additionally stated that, in April 1998, in the midst of rampant rioting and looting, a group of Muslims asked him to join them in burning churches and killing Christians. After discovering that Bangsawa was a Christian,[3] the group "started to hit [him], tied [him] with rope, and hit [his] face with a hot bar until [he] was unconscious." Bangsawa stated that his friend found him the next day seriously injured, but Bangsawa did not go to the hospital because his parents could not afford it.

Bangsawa claimed that because of these incidents he decided to come to the United States, and did so in 1998. However, according to Bangsawa, he returned to Indonesia soon thereafter because his mother was critically ill. Bangsawa later left Indonesia and lived for five months in South Africa. He did not apply for asylum in South Africa, and returned again to Indonesia. Bangsawa claimed that he went back to Indonesia on this occasion because his friend "ran away with [his] money, so [he] could not do anything else," and, "even though [he] was scared, [he] had to go back." When asked, Bangsawa stated that he had originally purchased the return ticket to Indonesia because it was required by law.

---

[3]Indonesian government-issued identity cards display the individual's religion.

Bangsawa submitted several documents in support of his application. He submitted a letter from Reverend Mesach G. Agung Wijoyo, the pastor of the Bethany Indonesian Church of God of Georgia, located in Norcross, Georgia. The letter stated that Bangsawa had been a faithful and active church worker since 2000.

Bangsawa also submitted a letter from his parents stating that: (1) Bangsawa and his family were persecuted by Muslim groups when Bangsawa was a youth because his parents had a Bible study at their house with Jehovah's Witnesses; (2) their car was attacked by a group of Muslims when they were on their way to church, and, as a result, Bangsawa's mother was hospitalized; and (3) Bangsawa himself also was seriously injured at some later date, but did not receive hospitalization because of the cost. The letter also stated that: "after [Bangsawa] had arrived in America the first time, we asked him to return as soon as possible because his mother seriously fell sick," but, because of the persecution, "we consented our son to leave for America for the second time."

Bangsawa also submitted a letter from "RS Persahabatan," which was translated as "General Hospital," purporting to document that Bangsawa's mother "went through intensive medical treatment on January 18, 1998 due to a shock, head and face injury, which had caused unconsciousness."

In addition, Bangsawa submitted numerous reports from international organizations chronicling violence against Christians in Indonesia.

**B. IJ's Decision**

In an oral decision, the IJ found that Bangsawa's testimony lacked credibility, and that Bangsawa's entire application was frivolous and fraudulently filed. The IJ based this determination on several factors.

First, during the course of the hearing, the IJ questioned Bangsawa about the tenets of the Jehovah's Witness faith. According to the IJ, Bangsawa incorrectly answered questions about the Jehovah's Witness view of "how Christ died"; their teachings about the year in which Satan rebelled against God; their view of hell; and the number of people who will be able to "live in the presence of God." The IJ observed: "[Y]ou represent that you, both your parents are Jehovah's Witnesses and obviously they would witness to you, . . . but you don't know the fundamentals."[4] Further, the IJ found Bangsawa's application suspicious because of the involvement of Reverend Wijoyo. Bangsawa's initial interviewer at the BICE office in Atlanta noted that Bangsawa arrived at the BICE office to file

---

[4]As noted above, Bangsawa contends that he is a Christian and not a Jehovah's Witness. He also argues that his knowledge of the Jehovah's Witness religion is irrelevant because he was persecuted merely because he was a non-Muslim, not for any specific religious belief. However, these arguments do not alter our analysis of the IJ's credibility determination, which was based on Bangsawa's contentions that his parents held Jehovah's Witness Bible studies in their home, regularly witnessed to him, and were persecuted because of these practices.

his application for asylum along with 25 other individuals from Bethany Indonesian Church of God, each of whom recently filed for asylum. In addition, the BICE interviewer noted that the Philadelphia BICE office "is conducting an ongoing investigation into 1700 fraudulent asylum applications, many of which can be linked back to Wijoyo and his church."

Further, the IJ explicitly found that Bangsawa was untruthful about whether Wijoyo helped Bangsawa apply for asylum. During Bangsawa's initial interview with the BICE, Bangsawa stated that Wijoyo encouraged him to apply. Later in the interview, Bangsawa recanted this story and stated that filing for asylum was his own idea. At the hearing before the IJ, Bangsawa again denied that Wijoyo had played any role in the preparation of Bangsawa's asylum application. The IJ made a finding that Bangsawa perjured himself on this point based in part upon the letter from Reverend Wijoyo included in Bangsawa's application, and the fact that Bangsawa applied for asylum along with a 25-person group from Wijoyo's church.

Additionally, the IJ found it suspicious that Bangsawa did not file his application until he had been in the United States for more than three years. Bangsawa testified that he did not file an asylum application when he first arrived in the United States because his friends told him that he would be deported if he applied.

7

In its decision, the IJ pointed out several other inconsistencies in Bangsawa's testimony: (1) Bangsawa did not explain why his parents gave up their Jehovah's Witness beliefs between 1980 and 1990; (2) Bangsawa failed to provide any details about his home being burglarized and vandalized in July 1997; (3) Bangsawa described being viciously attacked by a group of Muslims, but did not go to the hospital; and (4) after all of the events he described, Bangsawa returned to Indonesia twice. The IJ also questioned the authenticity of the purported hospital document that Bangsawa submitted to substantiate the claim that his mother was hospitalized after Muslims attacked their car. The IJ noted that the document contained irregular hospital language and did not describe the nature of the treatment or the injuries.

The IJ acknowledged that there was conflict between Christians and Muslims in Indonesia, but questioned whether Bangsawa was taking advantage of the conflicts to create a claim. The IJ specifically stated that it "question[ed] [Bangsawa's] association with this pastor . . . [who] is involved in assisting individuals with creating asylum claims." The IJ also expressed doubt as to whether Bangsawa was even Christian, as the only evidence of his belief was a letter from the questionable pastor.

In addition to the adverse credibility determination, the IJ found that Bangsawa's repeated returns to Indonesia further cut against his asylum claim. The

8

IJ noted that: (1) Bangsawa had provided no documentation of his mother's illness, the purported reason for his initial return; and (2) Bangsawa had failed to explain adequately why he would return to Indonesia after spending five months in South Africa. The IJ stated that "[i]t seems unlikely, if this individual had suffered so greatly . . . and feared for his life and . . . would rather die than return to Indonesia, yet he does, not once but twice."

The IJ thus found that Bangsawa had not established that he had suffered past persecution or had a well-founded fear of future persecution, and denied him asylum. For the same reasons, the IJ denied Bangsawa's request for withholding of removal, finding that Bangsawa failed to meet the heavier burden of showing a clear probability of persecution. The IJ found that Bangsawa likewise was not entitled to CAT relief.[5]

In addition, the IJ determined that Bangsawa's asylum application was not timely filed. The IJ found that Bangsawa had not provided a reasonable explanation sufficient to waive the one-year requirement, and thus denied Bangsawa's asylum application on the additional ground of untimeliness.

---

[5]On appeal, Bangsawa does not make any argument regarding his CAT claim, and thus it is deemed abandoned. Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

Thus, the IJ ordered Bangsawa removed to Indonesia.[6]

Bangsawa appealed to the BIA. In a brief opinion, the BIA adopted and affirmed the IJ's decision and dismissed Bangsawa's appeal.[7]

Bangsawa then timely petitioned this Court for review of the BIA's decision, and requested a stay of his removal pending adjudication of his petition. The government opposed Bangsawa's motion for a stay of removal and this Court denied the motion.[8] We now address Bangsawa's petition for review.

## II. DISCUSSION

### A. Asylum Claim

We first conclude that we lack jurisdiction to consider Bangsawa's asylum claim asserted in his petition of review. An alien may apply for asylum only if he "demonstrates by clear and convincing evidence that the application has been filed

---

[6]The IJ also specifically found that Bangsawa had committed fraud at the hearing and that this was an excludable offense under INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i). The IJ thus ordered Bangsawa removed to Indonesia based upon this fraud in addition to the overstay-of-visa grounds stated in the notice to appear.

[7]Because the BIA adopted the IJ's reasoning, we review the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

[8]In its July 2, 2004 filing that opposed Bangsawa's motion for a stay of removal, the government also included a motion to dismiss Bangsawa's petition for lack of jurisdiction. The government's motion to dismiss was filed before Bangsawa filed his initial brief on appeal and was based upon the government's belief that Bangsawa had not exhausted, before the IJ and the BIA, certain claims he would be making in this Court. This Court ordered the government's July 2, 2004 motion to dismiss carried with the case. We now conclude that Bangsawa did not fail to exhaust those claims, and we therefore deny the government's July 2, 2004 motion to dismiss.

After filing the July 2, 2004 motion, the government's brief on appeal raised an additional jurisdictional issue which we address in Part II.A of this opinion.

within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The IJ concluded that Bangsawa's application was not timely filed, and that none of the exceptions to the one-year time limitation applied.[9]

This Court is without jurisdiction to review such a determination. See 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [section 1158(a)(2)]."); Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (concluding that 8 U.S.C. § 1158(a)(3) divests this Court of jurisdiction to review "a decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances that would excuse his untimely filing").

Therefore, we must dismiss the portion of Bangsawa's petition for review addressing his claim for asylum. We are thus left only with Bangsawa's claim for withholding of removal.[10]

**B. Withholding of Removal**

We also conclude that substantial evidence supports the IJ's determination that Bangsawa was not entitled to withholding of removal. Under the INA, "[a]n

---

[9] Bangsawa conceded that his application was filed more than three years after his arrival in the United States. However, he had argued that his claim fell under 8 U.S.C. § 1158(a)(2)(D), which provides an exception to the one-year time limitation if the alien shows (1) changed circumstances that have materially affected the alien's eligibility for asylum, or (2) "extraordinary circumstances relating to the delay . . . ."

[10] The timely-filing provisions of 8 U.S.C. § 1158(a)(2)(B) apply only to asylum claims, and not to claims for withholding of removal.

alien seeking withholding of removal . . . must show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza, 327 F.3d at 1287; see also 8 U.S.C. § 1231(b)(3)(A). The alien also "bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287.

The IJ determined that Bangsawa had not carried this evidentiary burden. We must affirm the IJ's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks and citation omitted).

Here, substantial evidence supports the IJ's determination. First, the IJ made permissible adverse credibility determinations regarding Bangsawa's testimony about matters that form the basis of his claim for withholding of removal. See D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (noting that credibility determinations are reviewed under the substantial evidence test and stating that "[t]he trier of fact must determine credibility, and [we] may not substitute [our] judgment for that of the [IJ] with respect to credibility findings"). Such a determination, standing alone, may have been enough to support the denial of Bangsawa's application. See Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005) ("[A]n adverse credibility determination alone may be

12

sufficient to support the denial of an asylum application." (citation omitted)).

However, in addition to this adverse credibility determination, the IJ further found that Bangsawa's repeated returns to Indonesia, and his subsequent stays there without incident, also undermined his claim that it was more likely than not that he would be persecuted upon his return. See, e.g., Ngarurih v. Ashcroft, 371 F.3d 182, 188-89 (4th Cir. 2004) (alien's return and remaining unharmed in his native country after allegedly suffering persecution diminishes fear of future persecution).

On appeal, Bangsawa goes to great lengths to show generally that there is violence in Indonesia against Christians. He relies on numerous newspaper accounts and reports from the State Department and other organizations regarding violence, reportedly perpetrated by Muslims (some with links to Al-Qaeda). However, as noted by the IJ, none of this information shows that it is more likely than not that Bangsawa himself will be singled-out for persecution or torture upon his return to Indonesia. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231-32 & 1232 n.7 (11th Cir. 2005) (concluding that petitioner's failure to show that petitioner will be "singled-out" for persecution is fatal to asylum claim where petitioner relied merely on reports of generalized violence).

Accordingly, the portion of Bangsawa's petition for review pertaining to withholding of removal is denied.

### III. CONCLUSION

For all of the above reasons, we dismiss Bangsawa's petition for review of the denial of his asylum application and deny his petition for review of the denial of his application for withholding of removal.

**PETITION DISMISSED IN PART, DENIED IN PART.**